CITY AND COUNTY OF HONOLULU, A MUNICIPAL CORPORATION *v.* BISHOP TRUST COMPANY, LTD., AND J. RUSSELL CADES, TRUSTEES UNDER INDENTURE OF TRUST OF T.A.K. CLEGHORN, HELEN H. CLEGHORN, SURVIVING WIFE OF PERCY T. CLEGHORN, ELINOR HEWLETT BROWN, ELIZABETH LOUISA CLEGHORN SMITH, WILLIAM LODGE CLEGHORN, DOTVIVI CORPORATION, LTD., BISHOP NATIONAL BANK OF HAWAII, AND JOHN PATRICK BETRO AND BISHOP TRUST CO. LTD., TRUSTEES FOR THE VERN V. GILLIGAN AND VIOLET G. GILLIGAN TRUST.

No. 4458

DECEMBER 12, 1966.

RICHARDSON, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

This is an appeal by John Patrick Betro and Violet G. Gilligan, intervenors in eminent domain proceedings. The trial court granted plaintiff's (City and County of Honolulu, hereinafter referred to as the "City") motion for summary judgment and allowed this interlocutory appeal.

The facts are not in dispute. The City brought the condemnation action on December 31, 1957. It sought to condemn the land in question for a public park and beach at Waikiki. An amended complaint was filed on February 21, 1958. Before the amendment of the complaint, the property (*i.e.*, the fee simple ownership) was placed in trust, and the trustees and beneficiaries of that trust are hereinafter referred to as the "Cleghorn defendants."

On February 26, 1958, the trial court entered an Order Putting Plaintiff in Possession, providing in part as follows: "That the Plaintiff herein be and is hereby awarded the possession of the real property described in the Amended Complaint on file herein with the right to do such work thereon as may be necessary for the purpose for which the taking of said real property * * * is sought." At the time, the intervenors were not parties to the case. After they intervened in 1959, the intervenors were granted a separate trial.

The case, as to the Cleghorn defendants and Dotvivi Corporation, Ltd., lessee of the property, went to trial and a verdict was rendered for them on the fair market value of Parcel 8. On January 15, 1963, judgment was entered

for these defendants. On February 14, 1963, Notice of Appeal to the Supreme Court was filed by the City. This court rendered an opinion (48 Haw. 444) on July 9, 1965, and pursuant thereto, ordered a new trial as to the value of Parcel 8.

This appeal presents the question of the intervenors' right to certain relief, as hereinafter set forth. On December 15, 1959, the intervenors filed their Motion for Leave to Intervene as defendants. They were a sublessee (Betro) under an unrecorded sublease and a mortgagee (Bishop Trust Co.) under an unrecorded mortgage. On December 15, 1959, the trial court issued a Consent to Entry of an Order Allowing Intervention as Defendants, and permitted the filing of an answer in which intervenors denied that the taking was for a public purpose. On January 18, 1960, intervenors filed a motion to vacate the order of possession, which motion was denied on January 5, 1962, "without prejudice to whatever claim for damages any Defendant or Intervenor herein may have because of the taking of property herein." On July 18, 1962, the intervenors filed their Motion for Separate Trial, which was subsequently granted. On the same day, they filed an amended answer, paragraph 5 of which was as follows:

"5. The taking of possession of the premises by the Plaintiff for no public purpose whatsoever pending condemnation was without authority and has damaged intervenor-defendants to the extent of the fair market value of their said leasehold from the date of possession on May 23, 1958, to date and will continue to damage them to said extent until the final order of condemnation is entered herein or until said property is put to the public use for which it was allegedly taken."

After the hearing on Cross Motions for Summary Judgment, testing the legal sufficiency of this claim on the part of the intervenors, the trial court entered its Order Deny-

ing Intervenors Motion for Summary Judgment and an Order Granting Plaintiff's (City) Motion for Summary Judgment. The trial court allowed an interlocutory appeal on July 20, 1964. On July 29, 1964, the intervenors filed a Notice of Appeal to the Supreme Court. This appeal is before us now. It involves the intervenors' asserted right to "damages by way of compensation for the fair market value of their leasehold for the period of possession by the Plaintiff to the date of entry of the final order of condemnation or the date the property was ultimately put to the public use for which it was allegedly taken."

The intervenors assert two alleged errors of the trial court. First, "the court below erred in concluding that the plaintiff had an absolute right to obtain immediate possession of the premises prior to an adjudication of the condemnation, merely by making a prima facie showing of its right to maintain the action and by payment into court of the estimated sum of money to be just compensation or damages for the taking of the property." Secondly, "the court erred in declining to take into consideration any evidence that the plaintiff's purpose for taking immediate possession was to lease out the existing premises in order to obtain revenues therefrom, and not for doing such work thereon as might be necessary in order to put them to the public use for which they were being condemned, or for any other immediate public purpose."

We consider first the intervenors' opening brief which fails to comply with the *Rules of the Supreme Court of the State of Hawaii*, Rule 3(b)(3). This rule requires the opening brief to contain:

"(3) A concise abstract or statement of the case presenting succinctly the facts, a statement of the questions involved and the manner in which they are raised. The statement of the questions involved should be set forth in the briefest and most general terms, without

names, dates, amounts or particulars of any kind. Ordinarily no point will be considered which is not thus set forth or necessarily suggested by the statement of questions involved."

There is no such statement of the questions involved in this case. This court said in *Lyon* v. *Bush,* 49 Haw. 116, 118, 412 P.2d 662, 664-665:

"Rule 3(b)(3) of the Rules of this Court requires briefs on appeal to present a concise statement of the questions involved and the manner in which they are raised. *The scope of appeal is limited to the points set forth in or necessarily suggested by the statement of questions involved."* (Emphasis added.)

See *State* v. *Kahua Ranch,* 47 Haw. 466, 468-69, 390 P.2d 737, 739; *Miller* v. *Loo,* 43 Haw. 76, 80. Because of this aforementioned defect, this court would not, ordinarily, entertain the appeal. In spite of the fact that the intervenors have failed to state the question involved, this court will consider the points set forth or necessarily suggested by the specification of errors.

The intervenors' two specifications of error present but a single point. As the intervenors argue: "Plaintiff must stand or fall on its avowed position that it had an unconditional and absolute right under the statute to take immediate possession of the property as part of the act of appropriation to the public use. If the intervenors are sustained in their first specification of error it naturally follows that the second specification should be sustained as well."

We do not agree that the trial court erred. There is presented the question as to whether appellee had the right to immediate possession of the property under our condemnation laws. Section 8-27, R.L.H. 1955 clearly gives this right to appellee upon a prima facie showing. This section states:

"* * * At any time after the commencement of an action pursuant to this part, * * * any county may file a motion for an order of possession invoking this section and supported by an affidavit alleging, or by oral evidence prima facie showing, (a) the right of the * * * county to maintain the action, (b) the public use for which the real property sought to be condemned is being taken, and (c) the sum of money estimated by the * * * county to be just compensation or damages for the taking of such property."

The record reveals that the City made such a prima facie showing, and paid into court the estimated sum. Thus, on this record,[1] we cannot say that the trial court erred in concluding that the City had an absolute right to obtain immediate possession of the premises.

Under clause (b) of section 8-27 there is required only that condemnor show "the public use for which the real property sought to be condemned is being taken." This has to do with the object of the condemnation, here a public park and beach. It is what has been referred to by the intervenors as the "ultimate public use." A comparison with R.L.H. 1955, § 8-26, makes this clear. Section 8-26 also provides for taking of possession, but in contrast to section 8-27, it is generally available to condemnors, while section 8-27 is restricted to use by the State or a county.

---

[1] No issue was raised by the intervenors in the court below as to the notice given them concerning the Order of Possession. After the intervention was allowed, which was on December 15, 1959, the intervenors did not move to vacate the order of possession within the statutory ten days allowed by R.L.H. 1955, § 8-27. Their motion to vacate was filed on January 18, 1960, and even then made no point concerning lack of notice of the order of possession.

Appellants further argue that: "Whether an order for possession shall be made depends on its advisability, and the determination of this question generally rests in the discretion of the trial court. * * * [T]he order of possession in the instant case was obtained ex parte without notice to Intervenors, and the court below had no opportunity to exercise its discretion * * *." No issue as to the advisability of the Order of Possession has been raised, by reason of there having been no timely proceedings taken to that end.

Section 8-26 requires that the condemning authority show "the reasons for requiring an immediate occupation of the land sought to be condemned." Under the alternative procedure provided by section 8-27, available only to the State or a county and used here, no such showing of reasons for requiring immediate occupation need be made.

The intervenors nevertheless argue that "the right to possession prior to final judgment pursuant to a 'quick-taking' provision does not exist in the absence of proof for an *immediate necessity* therefor to execute the public purpose." (Emphasis added.) The gist of the argument is that the City was obligated to immediately demolish the Cleghorn building and "to execute the public purpose" by turning the area into a beach park. Their argument concludes that, since the immediate demolition was not accomplished, the temporary use, "to wit: leasing the property to private persons, was not a public use." They say that this private leasing constitutes a "legal fraud on the owner."

The trial judge's comment and conclusion upon the above-mentioned argument was this:

"Now if, for some reason, the City was not ready immediately to convert the real property into a park, it was proper and sensible for the City to rent it out temporarily, or to make some other use of the property advantageous to the City."

We agree. The trial court properly held that leasing the property on a temporary basis was not unlawful. In *Heger* v. *City of St. Louis*, 20 S.W.2d 665 (Mo.), the court said at page 670:

"* * * But we are of the opinion that the temporary rental of the property in question, under the circumstances shown, was not a diversion or illegal use thereof, and that the city and board of commissioners should be permitted so to conserve and use these houses for

such time, but only for such time, as may be reasonably necessary in the exercise of due diligence to make necessary provision for their disposal or conversion to legitimate park uses."

Under the circumstances of our case, we cannot say that the City was without a public purpose for the taking. See *Vilbig* v. *Housing Authority of the City of Dallas,* 287 S.W.2d 323 (Tex.); *Beistline* v. *City of San Diego,* 256 F.2d 421 (9th Cir.). The private rental was a temporary —and we may add a necessary—exercise of due diligence until the ultimate public use could be accomplished. As such, the taking does not constitute a "legal fraud." See *Carlor Co.* v. *City of Miami,* 62 So.2d 897 (Fla.). The Supreme Court of Florida made some pertinent observations in the *Carlor* case:

"* * * It is not necessary that a political subdivision of the state have money on hand, plans and specifications prepared and all other preparations necessary for immediate construction before it can determine the necessity for taking private property for a public purpose.

"* * * It is the duty of public officials to look to the future and plan for the future. * * * The hands of public officials should not be tied to immediate necessities of the present but they should be permitted, within reasonable limitations, to contemplate and plan for the future." *Carlor Co.* v. *City of Miami, supra* at 902, 903.

These cases are in point unless there is significance in the fact that the condemnation proceedings in the cited cases had proceeded to final judgment or title had been taken in some other manner. The intervenors seek to make that distinction. They admit that after vesting of title in the City, it would be legitimate to use the property, during the interim period, for other uses pending the development

of the public project. The intervenors state:

"It should be mentioned here that the situation is entirely different than the one where the Plaintiff may be acquiring property for public use but for one reason or another is not yet prepared to put it to its public use at the time of the vesting [under section 8-24] of the property in the Plaintiff pursuant to the final judgment and order of condemnation. *In such instances there is no doubt that some form of interim use would be legitimate, such as renting the property pending the development of the public project.*" (Opening Brief, p. 19.) (Emphasis added.)

The intervenors' concession is made on the basis of cases adjudicated under the Federal Declaration of Taking Act, 40 U.S.C.A. § 258 a et seq, which vests title immediately upon the filing of the declaration of taking and making of the required deposit. See *U.S.* v. *Miller,* 317 U.S. 369; *U.S.* v. *6576.27 Acres of Land,* 77 F.Supp. 244 (S.W. N.D.). Under the Federal Act, the government cannot discontinue or abandon the condemnation proceeding. See *U.S.* v. *Sunset Cemetery Co.,* 132 F.2d 163, 164 (7th Cir.). However, under our statute, pursuant to section 8-25, a defendant who would have been entitled to compensation or damages if the property had been finally taken, is allowed damages upon the abandonment of the proceedings. Our statute guarantees to those who are entitled to compensation or damages in the event of a final taking, that if the proceeding is not completed, damages sustained by reason of the bringing of the proceeding and the taking of possession will be paid. During the pendency of the condemnation action, an owner's rights are protected by a guarantee that he will be made whole in the event of abandonment. No reason appears why possession may not be taken under our statute, as under the federal statute, even though there is no immediate need of such possession. Upon the hear-

ing, the intervenors contended that a statute so interpreted would be unconstitutional, but such contention has not been supported by argument, and accordingly does not merit consideration. *Cf., Gunzaga* v: *Kaiwiki Sugar Co.,* 28 Haw. 383; *Application of Avery,* 44 Haw. 26, 28, 352 P.2d 607, 608.

As noted by the court below, there is good reason why a condemning authority may desire to pay into court the amount of the estimated just compensation. Such payment, of course, is accompanied by the taking of possession. The payment of the estimated amount into court reduces the interest, which otherwise runs from the date of summons in the form of blight of summons damages, subject to set-off of the rents and profits received after the date of summons. *State* v. *Coney,* 45 Haw. 650, 372 P.2d 348, *rehearing denied,* 46 Haw. 50, 373 P.2d 903.

It is our conclusion that the meaning of the statute is plain, and that upon the issue before us, which is whether the taking of possession prior to final order of condemnation was unauthorized because it was made at a time when the City was not prepared to immediately devote the property to the contemplated public use or to do work directed to that end, no ground for reversal of the summary judgment has been shown.

Therefore, the judgment appealed from is affirmed.

*E. D. Crumpacker,* (*Crumpacker & Sterry* of counsel) for intervenor-appellant.

*Stanley Ling,* Corporation Counsel City and County of Honolulu (*Richard Y. C. Au,* Deputy Corporation Counsel with him on the brief) for plaintiff-appellee.